## Feigley *against* Sponeberger.*

A sale of goods on credit to one partner, in the course of the business of the partnership, is a sale to the firm, unless it be made contrary to an express notice by the other partner not to trust the firm on his account; in which case, he alone will be liable who made the purchase, and an action to recover the price cannot be maintained against the firm.

ERROR to the Common Pleas of *Columbia* county.

George Amos and Nathan Feigley against Daniel Sponeberger, Charles F. Mann, J. F. Mann, Thomas Metzger and Jacob Rapp. This was an action of *assumpsit* to recover the price of goods and merchandise sold and delivered by the plaintiffs to the defendants.

Daniel Sponeberger and C. F. & J. F. Mann, entered into a contract with the Lehigh Coal and Navigation Company for the construction of a section of the canal; the interest of Sponeberger in the contract was one-half. After the work was partly done, C. F. & J. F. Mann transferred one-half of their interest in the contract to Thomas Metzger, upon the conditions that he was to superintend the work to its completion, and be entitled to one-half the profits, if any, and be subject to one-half the losses. At the same time, Daniel Sponeberger transferred the one-half of his interest to Jacob Rapp upon the same terms. When these transfers were made, Sponeberger and C. F. & J. F. Mann directed the Lehigh Coal and Navigation Company to make the monthly payments to Jacob Rapp or Thomas Metzger, " their receipt to be the same as ours," except the final estimate. After the plaintiffs had proved these facts, they gave in evidence their books of

* This case was argued at July Term 1842.

original entries, in which Rapp and Metzger were charged with goods and merchandise furnished for the work to the amount of $791.79.

The defendants then proved, that after the transfer of the one-half of his interest in the contract by Sponeberger, he called upon the plaintiffs, settled his account, and paid the balance then due, and gave them notice " not to trust Thomas Metzger or Jacob Rapp, or any other person on my credit, without an order from me, or I come myself." The goods and merchandise, for the price of which this suit was brought, were sold to Metzger and Rapp after the date of this notice.

The plaintiffs requested the court to charge the jury:—" That notwithstanding the jury should believe that the notice referred to was given to the plaintiffs, yet, if the goods and merchandise were received and used upon the work in which the defendants were jointly interested, they were jointly liable for the plaintiffs' claim;" and " that the notice as proved was not sufficient to bar the plaintiffs from recovering from the dormant partners."

LEWIS, President, instructed the jury, that the facts of the case constituted all the parties interested in the contract with the company, partners: but if the jury believed that notice was given by Sponeberger to the plaintiffs, not to credit the firm on his account, they were not entitled to recover in this action. A verdict and judgment were rendered for the defendants.

*Greenough,* for plaintiffs in error, argued that Sponeberger, notwithstanding his notice, remained liable for goods actually received and used for his benefit: even if a partner give notice of his having withdrawn from the firm, yet if he continues in fact to participate in the profits, he would be liable to creditors. 3 *Kent's Com.* 45. If the plaintiff had omitted to sue Sponeberger, the others might have pleaded it in abatement; and, certainly, the proof of such notice would not avoid the effect of the plea.

*Pleasants* and *Cooper,* contra, argued that partners had but an implied authority to bind each other in matters pertaining to the partnership; and there was no reason why this implication might not be removed as to third persons by an express notice, that, as between themselves, no such authority existed. Besides, the law is so settled by the best authorities. 10 *East* 264; 3 *Kent's Com.* 45; 1 *Whart.* 388; *Col. on Part.* 214; 3 *Conn. Rep.* 124; *Cary on Part.* 111; 19 *Johns.* 538; *Chit. on Con.* 207; 1 *Young & Jarvis* 227; *Gow on Part.* 49, *note* 3; 3 *Stark. Ev.* 1075.

The opinion of the Court was delivered by

KENNEDY, J.—The only question in this case was whether the defendant, Sponeberger, was liable to pay the plaintiffs for goods sold and delivered by them to the other defendants, as partners of

[Feigley v. Sponeberger.]

Sponeberger, after he had given the plaintiffs notice not to trust them on his credit without an order from him, or he come himself in person. This question seems to have been decided frequently. Chancellor KENT, in treating the subject, says; "a sale to one partner, in a case within the scope and course of the partnership business, is, in judgment of law, a sale to the partnership. But if the purchase be contrary to a stipulation between the partners, and that stipulation be made known to the seller, or if, before the purchase or delivery one of the partners expressly forbids the same on joint account, it has been repeatedly decided that the seller must show a subsequent assent of the other partners, or that the goods came to the use of the firm." 3 *Kent's Com.* 45. For this doctrine he cites the following cases, which go to support it fully. *Willis* v. *Dyson*, (1 *Stark. N. P.* 164); *Galway* v. *Matthew*, (1 *Camp. N. P.* 403), S. C. 10 *East* 264; *Leavitt* v. *Peck*, (3 *Conn.* 124). And notwithstanding he mentions one or two cases somewhat at variance with it, where the partnership consisted of three or more persons, *Rooth* v. *Quin*, (7 *Price* 193), and *Kirk* v. *Hodgson*, (3 *Johns. Ch. Rep.* 400), yet he declares the better opinion to be, "that it is in the power of any one partner to interfere and arrest the firm from the obligation of an inchoate purchase which is deemed injurious." 3 *Kent's Com.* 45. And indeed it would seem to be unreasonable and contrary to analogy to hold otherwise; for the power of one partner to bind the others is not essential to the constitution of a partnership. In most, if not in all cases, it is but an implied power, and seldom, if ever, expressly provided for or given by the terms of the partnership agreement. It would therefore be strange if the exercise of it could not be expressly provided against or forbidden by any one member of the firm, so as to protect himself against claims created contrary to his assent and express direction, by one or more of his partners, after notice given by him to the party making the claim not to trust or credit his partners or any of them on his account, without his express and direct authority to do so. We therefore think that the instruction given by the court below to the jury was correct.

Judgment affirmed.