BOWLES, Price Administrator, v. SUN-SHINE PACKING CORPORATION OF PENNSYLVANIA.

Civil Action No. 2869.

District Court, W. D. Pennsylvania.
May 14, 1946.

Thomas F. Garrahan and Samuel Chertoff, both of Pittsburgh, Pa., for plaintiff.

Edmund F. Maher, of San Francisco, Cal., and S. Y. Rossiter, of Erie, Pa., for defendant.

GOURLEY, District Judge.

This is an action in which plaintiff seeks treble damages for the sale by defendant of certain fruit juices over and above the prices fixed pursuant to the Emergency Price Control Act of 1942, Section 205(e), 50 U.S.C.A.Appendix, § 925(e): i. e., the General Maximum Price Regulation (7 F.R. 3153) establishing the maximum prices for canned crab-apple juice and canned grape juice; Maximum Price Regulation No. 185 (7 F.R. 5772) establishing the maximum prices for canned strawberry juice and canned black raspberry juice; Maximum Price Regulation No. 207 (7 F.R. 6599) establishing the maximum prices for frozen fruits, berries and vegetables for packers;

and Maximum Price Regulation No. 409 (8 F.R. 8358) establishing the maximum prices for frozen fruits, berries and vegetables (1943 pack).

Defendant, by a previous answer in nature of a demurrer, asserted the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., to be unconstitutional as a whole, and even if not unconstitutional as a whole, Section 205(e) thereof to be unconstitutional with respect to treble damages; further that the Act itself did not vest the right to treble damages either in plaintiff or in the United States; that so far as concerns sales for 1943 from the 1943 pack, they did not come within the Regulation promulgated in 1942 for the 1942 pack, and further that this action could not be maintained because there was no showing that the Secretary of Agriculture consented to the bringing of this suit.

At that time, defendant in view of the decisions of the Supreme Court in Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; and Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892, abandoned its contention that the Emergency Price Control Act was unconstitutional, and pressed only the following contentions, to wit:

(1) That the Emergency Price Control Act does not vest any right in the Administrator to recover treble damages;

(2) That as to the items claimed in Exhibit III attached to the complaint, there was no ceiling price or regulation in force at the time of these transactions for the year 1943;

(3) That the evidence on which this suit is based was obtained from defendant's books by compulsion, and, therefore, cannot be used against the defendant; and

(4) That the plaintiff has no right to sue without the consent of the Secretary of Agriculture because the commodities involved are agricultural commodities.

On February 7, 1945, this Court rendered an opinion, 59 F.Supp. 164, wherein it overruled defendant's motion and directed defendant to answer the Complaint herein.

Defendant having complied with said order, is presently before the Court on a second or renewal motion to dismiss the Complaint.

Defendant contends that said motion should be sustained for the following reasons:

(1) That the Appropriation Acts curtail the Administrator's capacity to bring suit under Section 205 of the Price Control Act.

(2) That the claim should be dismissed because Congress in the Appropriation Acts denied to the Administrator the right to use appropriated funds to enforce ceilings for agricultural commodities or processed food made therefrom where:

(a) The Administrator had fixed the ceiling price prior to the laying or adoption of a floor price by the Secretary of Agriculture.

(b) The Administrator endeavors to enforce ceiling prices after the Secretary of Agriculture adopts or lays a new floor price.

(3) That the validity of the Regulation is not at issue and, as a result thereof, this Court has jurisdiction to control the Administrator's expenditure of appropriated funds where compliance has not been made with the provisions of the Price Control Act and the Appropriation Acts which made available the funds for the administration and enforcement of said Act.

It is, therefore, first necessary to consider the provisions of the Appropriation Acts and Emergency Price Control Act which have application to the facts in the instant case.

The First Supplemental National Defense Appropriation Act of 1943, 56 Stat. 712, Pub. Law 678, 77th Congress, provides, inter alia, as follows:

"Provided further, That no part of this appropriation shall be used to enforce any maximum price or prices on any agricultural commodity or any commodity processed or manufactured in whole or substantial part from any agricultural commodity unless and until (1) the Secretary of Agriculture has determined and published for such agricultural commodity the prices specified in section 3(a) of the Emergency Price Control Act of 1942; (2) in case of a comparable price for such agricul-

tural commodity, the Secretary of Agriculture has held public hearings and determined and published such comparable price in the manner prescribed by section 3(b) of said Act; and (3) the Secretary of Agriculture has determined after investigation and proclaimed that the maximum price or prices so established on any such agricultural commodity will reflect to the producer of such agricultural commodity a price in conformity with section 3(c) of said Act: Provided, further, That in the case of a maximum price or maximum prices heretofore established the provisions of the foregoing proviso shall not apply until the expiration of sixty days after the date of enactment of this Act."

The National War Agencies Appropriation Act of 1944, Pub. Law 139, 78th Congress, July 12, 1943, 57 Stat. page 526, provides, inter alia, as follows:

"Provided further, That no part of this appropriation shall be used to enforce any maximum price or prices on any * * * commodity processed or manufactured in whole or substantial part from any agricultural commodity, including milk and its products and livestock, unless and until (1) the Secretary of Agriculture has determined and published for such agricultural commodity the prices specified in section 3(a) of the Emergency Price Control Act of 1942, as amended by Public Law Numbered 729, approved October 2, 1942 [as amended]; (2) in case of a comparable price for such agricultural commodity, the Secretary of Agriculture has held public hearings and determined and published such comparable price in the manner prescribed by section 3(b) of said Act as amended; and (3) the Secretary of Agriculture has determined after investigation and proclaimed that the maximum price or prices so established on any such agricultural commodity, including milk and its products and livestock, will reflect to the producer of such agricultural commodity a price in conformity with section 3(c) of said Act as amended: Provided further, That such maximum price or prices shall conform in all respects to the provisions of section 3 of Public Law Numbered 729, approved October 2, 1942 [as amended]."

The provisions of the above Act were reincorporated by Congress in the 2nd Deficiency Appropriation Act of 1944, Pub. Law 375, 78th Congress, June 28, 1944, 58 Stat. 601, and in the 2nd Defense Appropriation Act of 1945, Pub.Law 132, 79th Congress, July 3, 1945, 59 Stat. 415.

Defendant contends that the plaintiff has since 1942 relied upon the funds authorized by Congress through passage of the four appropriation bills above cited for the carrying out of his duties as Price Control Administrator. That while acting in such capacity, he is denied the right to prosecute a suit by said Appropriation Acts in any case where plaintiff attempts to enforce a maximum price or maximum prices on any agricultural commodity or any commodity processed or manufactured in whole or in part from any agricultural commodity. That is, until the Secretary of Agriculture shall have made certain findings as provided by the Emergency Price Control Act and the said Appropriation Acts, the Administrator is denied the right to use the funds therein provided to enforce any maximum price or prices which maximum price or prices do not conform in all respects to Section 3 of the Emergency Price Control Act.

That under the provisions of said Appropriation Acts, in order for the Administrator to enforce maximum price regulations on any agricultural commodity or any commodity processed or manufactured in whole or in part therefrom, it is necessary for certain prerequisites to be met by the Administrator before the establishment of ceiling prices. That the Secretary of Agriculture shall have made certain findings as provided by the Emergency Price Control Act and the said Appropriation Acts, and if this has not been done, the ceiling prices fixed by the Administrator cannot be enforced or use made of the funds made available by the Appropriation Acts; this being provided by section 3 of the Emergency Price Control Act.

In other words, it is contended that the Administrator cannot erect any ceiling price on any farm product unless the Secretary of Agriculture shall have first laid the legal floor price for said commodity. In connec-

tion with any processed food, the Administrator cannot erect any ceiling price unless the Secretary of Agriculture shall have first laid the floor for the raw food price, and such a processed food ceiling must reflect that raw food floor price. That this action of the Secretary of Agriculture is mandatory, and, in addition thereto, such action must be taken yearly in order that the floor price will continue to meet the conditions which exist from season to season, or from one crop year to the next crop year.

Plaintiff contends, among other things, that the defense raised in the present motion was available at the time of the prior motion, and that the present motion, therefore, violates rule 12(g) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, requiring a consolidation of motions. With reference thereto, this Court is of the same opinion as that set forth in the case of Thorne, Neale & Co., Inc., v. Coe, Commissioner of Patents, et al., D.C.D.C., 3 F.R.D. 259, wherein it was held that rule 12(g) was designed to encourage the consolidation of motions and to discourage the dilatory device of making them in series and no waiver results from failure to exercise the option therein conferred. See also Martin v. Moery, D.C. Ill., 1 F.R.D. 130, which held an examination of defendant's former motion to dismiss discloses that it went only to the jurisdictional question of the amount in controversy under the allegations of the amended complaint, and not to the sufficiency of the claim stated in the amended complaint. The former motion was within the meaning of the first of the six defenses that may be made by motion under the provisions of rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, while his present motion is within the meaning of the sixth defense under said Rule which reads as follows:

"(b) How Presented. Every defense, in law or fact, to * * * a claim, counterclaim, * * * or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, he may assert at the trial any defense in law or fact to that claim for relief."

Rule 12(g) of the Federal Rules of Civil Procedure, which has for its purpose the prevention of unnecessary delay by prohibiting the filing of consecutive motions, reads:

"(g) Consolidation of Motions. A party who makes a motion under this rule may join with it the other motions herein provided for and then available to him. If a party makes a motion under this rule and does not include therein all defenses and objections then available to him which this rule permits to be raised by motion, he shall not thereafter make a motion based on any of the defenses or objections so omitted, except that prior to making any other motions under this rule he may make a motion in which are joined all the defenses numbered (1) to (5) in subdivision (b) of this rule which he cares to assert."

Continuing in the same case the Court said 1 F.R.D. 127, 123: "Under the provisions of the last-quoted rule, the defendants are specifically authorized to make defenses one to five, inclusive, in a single motion before making any other motions under said Rule 12. Defendants were not required to consolidate the sixth defense specified in Rule 12(b) with defenses one to five, or any of them, but were permitted, should they so desire, to defer the presentation of the sixth defense by motion until disposition had been made of the motion presenting defenses one to five, or any of them." See also Equitable Life Assur. Soc. of the United States v. Saftlas et al., D.C.E.D.Pa., 35 F.Supp. 62, holding a motion to dismiss action for insufficiency of complaint after denial of mo-

tion to dismiss on jurisdictional grounds does not violate rule requiring consolidation of motions, though defense raised by second motion was available at time of prior motion, in view of provision in such rule that motions concerning jurisdiction may be made before other motions. See also Phillips et al. v. Baker et al., 9 Cir., 121 F.2d 752.

Having determined that defendant's procedure did not violate provisions of rule 12(g), the Court shall, therefore, pass on to the other matters for consideration in the motion.

Defendant has submitted an exhaustive brief, and relies to a great extent on the Congressional interpretation of the Appropriation Act riders before their adoption, and has set forth various references as to hearings before the House and Senate Appropriation Committees, to the debates in Congress on the First Supplemental National Defense Appropriation Act of 1943, and to the language of that Act so far as it is concerned with Section 3 of the Price Control Act.

 It has been well established that provisions of substantive law may be amended or suspended by riders in an Appropriation Act, and that the regularly constituted Federal Courts will interpret such riders. United States v. Dickerson, 310 U.S. 554, 60 S.Ct. 1034, 84 L.Ed. 1356; United States v. Vulte, 233 U.S. 509, 34 S.Ct. 664, 58 L.Ed. 1071. National Labor Relations Board v. Thompson Products Co., Inc., 9 Cir., 141 Fed.2d 794, indicates that if Congress in forbidding the use of funds to enforce provisions of a basic law intends to amend or suspend provisions of that law, the Courts will give effect to the will of Congress as expressed in the Appropriation Act rider. The same question was indicated but not passed on in the case of National Labor Relations Board v. Gilfillan Bros., Inc., 9 Cir., 148 F.2d 990. In the case of State of Maine v. United States, 1 Cir. 134 F.2d 574, the Court held, that in construing any statute courts are always primarily interested in the intention of the legislature which passed it. This is the fundamental rule to be applied in construing any statute whether its words are clear or not. The Supreme Court clearly stated the rule in the case of Caminetti v. United States, 242 U.S. 470, 490, 37. S.Ct. 192, 196, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168, the same being as follows: " * * * when words are free from doubt they must be taken as the final expression of the legislative intent, and are not to be added to or subtracted from by considerations drawn from titles or designating names or reports accompanying their introduction, or from any extraneous source. In other words, the language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent." See also Bowles v. Wheeler, 9 Cir., 152 F.2d 34.

There has been no previous decision by any Court wherein it was asked to read both the price control law and the Appropriation Acts together. It, therefore, remains to be seen whether or not Congress, in prohibiting the use of funds appropriated to carry out the provisions and purposes of the price control law, intended to suspend or modify the authority given to the Administrator by Section 205 of the Price Act to enforce certain established maximum prices.

Section 3 of the Emergency Price Control Act provides, among other things, that the Administrator must neither establish nor maintain a price on any agricultural commodity which is lower than parity or the comparable price adjusted for grade, location and seasonal differentials, as determined and published by the Secretary of Agriculture, that the Secretary must, whenever he finds it necessary, publish such comparable prices, so adjusted, that the Administrator must neither establish nor maintain any price on any commodity made in whole or substantial part-thereof from such agricultural commodity which does not reflect to the producers thereof the parity or comparable price.

It, therefore, appears irrelevant at this time whether or not the Price Administrator has complied with the provisions of the Emergency Price Control Act and the Appropriation Acts in connection with all of the commodities which are involved in this proceeding. This is true for the reason that it has been admitted by the defendant at the time of argument and in its

brief that the ceiling prices established by Maximum Price Regulation 409 for frozen strawberries, for the market year 1943, were proper and not in conflict with Section 3 of the Emergency Price Control Act. It has also been admitted that the ceiling price for strawberry juice under Maximum Price Regulation No. 185, for the year 1943, is not in conflict of Section 3 of the Act. It is contended, however, that since the price ceilings asserted in the bill of complaint for crab-apple juice, grape juice, black raspberry juice and strawberries, for the market year 1944, and red currants, do not carry a compliance in all respects with Section 3 of the Act, that all allegations in the complaint should fall. It is substantially contended by the defendant that since the Administrator has used prohibited funds to enforce all of these prices, through the filing and prosecution of the suit generally, that the motion to dismiss should be granted as to all of the allegations which might give rise to a right of recovery even though part of the allegations would be supported as the basis for right of recovery.

Under the provisions of Rule 12(b) of the Federal Rules of Civil Procedure, it is provided, inter alia, that a motion to dismiss a complaint may be filed where it is believed that the allegations of fact set forth in the complaint fail to set forth any claim upon which relief can be granted.

It is a settled principle of law that a complaint should not be dismissed unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts which could be proved in support of the allegations set forth therein. Furthermore, the complaint should be viewed in a light most favorable to the plaintiff, and the truth of the facts well pleaded, including facts alleged on information and belief, or admitted. Continental Collieries, Inc. v. Schober, Jr., 3 Cir., 130 F.2d 631; 28 U.S.C.A. following section 723c, Federal Rules of Civil Procedure, rules 8(f) and 12(b) (6); Carroll et al. v. Morrison Hotel Corporation, 7 Cir., 149 F.2d 404; Garbutt v. Blanding Mines Co., 10 Cir., 141 F.2d 679; Galbreath v. Metropolitan Trust Co. of California et al., 10 Cir., 134 F.2d 569.

It, therefore, appears to the Court that the Government at the time of trial may be able to establish a claim which would entitle a recovery as to some of the commodities in which it is alleged that the defendant made an overcharge of the ceiling prices established by said Regulations. As a result thereof, the motion of the defendant to dismiss the complaint generally is refused.

It is, therefore, not necessary for the Court to decide at this time whether or not the Government is barred from enforcing certain alleged violations of certain regulations by the defendant in the sale of certain commodities above ceiling prices established by the Administrator. This is true for the reason that at the time of the trial, under the provisions of Rule 50 of the Federal Rules of Civil Procedure, it will be possible for the defendant to move for a directed verdict at the close of the evidence offered by the Government if it develops that the Government, through the Administrator, has failed or neglected to comply with the provisions of the Emergency Price Control Act and the Appropriation Acts which have application to the commodities in question.

An appropriate order will be filed with this Opinion.